**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHERYL BURGARD, on behalf of herself and others similarly situated,<br><br>                              Plaintiff,<br><br>               v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>                              Defendant. | Case No.: 7:24-cv-02885<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cheryl Burgard ("Plaintiff"), on behalf of herself and others similarly situated, hereby alleges as follows against Defendant International Business Machines Corporation ("IBM" or "Defendant").

## NATURE OF THE CLAIMS

1.        IBM is the largest industrial research organization in the world, with annual revenue exceeding $60 billion.

2.        IBM engages in a common, willful, and deliberate policy and practice of failing to compensate Plaintiff and other similarly situated Executive Assistants in accordance with the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

3.        First, IBM engages in a common pattern and practice of denying Executive Assistants payment for all hours worked, including overtime compensation.

4.        Specifically, IBM retaliates against Executive Assistants for logging their true hours worked, including by, *inter alia*, criticizing them for logging overtime, using their overtime hours as a basis to issue negative performance reviews, withholding incentive compensation, and

admonishing them for complaining that they are forced to work off the clock or discussing their overtime hours with their colleagues.

5.      As a result, Executive Assistants regularly work off the clock, including in the evenings and on weekends.

6.      IBM has actual or constructive knowledge of such off-the-clock work, yet still fails to compensate the Executive Assistants for their full hours worked.

7.      Further, IBM engages in a common pattern and practice of requiring Executive Assistants to work through their unpaid meal breaks.

8.      Finally, as a result of its tactics to force Executive Assistants to work off the clock, IBM issues its Executive Assistants wage statements that do not reflect their full hours worked and, thus, are inaccurate and unlawful under the NYLL.

9.      To redress these wrongs, Plaintiff brings claims against Defendant under the FLSA, as a collective action pursuant to 29 U.S.C. § 216(b) and applicable regulations thereunder, on behalf of herself and all other similarly situated persons employed by Defendant at any time during the full statute of limitations period.

10.     Plaintiff also brings claims under the NYLL as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of herself and all other similarly situated persons employed by Defendant at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

12.     The Court also has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367.

13.     Venue is proper under 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

## PARTIES

### A.     Plaintiff Cheryl Burgard

16.     Plaintiff is a resident of the State of New York and was employed by Defendant during the full statute of limitations.  Plaintiff left IBM's employ in or around February 2023.

17.     At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of all applicable statutes and regulations.

### B.     Defendant International Business Machines Corporation

18.     Defendant is a domestic business corporation with its principal place of business located at 1 Orchard Road, Armonk, New York 10504.

19.     At all relevant times, Defendant was an "employer" within the meaning of all applicable statutes and regulations.

## FACTS

### A.     Background

32.     IBM is the largest industrial research organization in the world, with annual revenue exceeding $60 billion.

33.     IBM employs approximately 150 Executive Assistants throughout the State of New York at any given time.

34.     Executive Assistants' job duties include, *inter alia*: (i) managing IBM executives' calendars; (ii) scheduling client meetings; (iii) coordinating IBM executives' travel; and (iv) submitting expenses on behalf of IBM executives.

35.     Executive Assistants all report directly to IBM's Global Administration department, which is located in Armonk, New York.

36.     Executive Assistants are paid hourly.

37.     Executive Assistants' typical scheduled workweek spans from Monday through Friday.

38.     Executive Assistants' typical workday ostensibly spans from approximately 8:30 a.m. through 5:15 p.m. with a 45-minute unpaid lunch break; however, as detailed below, Executive Assistants often work before their scheduled shift times, through lunch, after their scheduled shift times, and on weekends.

**B.     Unlawful Wage Practices**

39.     Despite its massive corporate wealth, IBM subjects its Executive Assistants to several common policies and practices that violate the rights of those Executive Assistants under the FLSA and NYLL.

**i.     Failure to Pay Overtime**

40.     First, IBM engages in a common pattern and practice of denying Executive Assistants payment for all hours worked, including overtime.

41.     While IBM permits Executive Assistants to log overtime, the Company discourages and retaliates against Executive Assistants from reporting their true hours worked.

42.     By way of example only, the Company retaliates against Executive Assistants who log overtime by, *inter alia*, issuing them poor performance reviews and, in turn, depressing the bonuses they can earn under IBM's Growth Driven Profit-Sharing program.

43.     As a result, Executive Assistants do not report their true hours worked, thus resulting in Executive Assistants being denied payment for all hours worked, including overtime.

44.     IBM has actual or constructive knowledge of Executive Assistants' hours worked.

45.     Indeed, IBM maintains electronic records of Executive Assistants' true hours worked.

46.     For example, Executive Assistants are required to log their hours via electronic timekeeping software.

47.     IBM also tracks when Executive Assistants arrive at and leave the office via electronic records of their building badge swipes.

48.     IBM also has records of Executive Assistants' shift start and end times for days when Executive Assistants work remotely—*e.g.*, as a result of the COVID-19 pandemic and when performing weekend or after-hours work.

49.     Specifically, Executive Assistants are required to log into their IBM email and other accounts via a virtual private network, which creates a record of when they each logged on and logged off.

50.     Given the nature of their work, which is largely done on the computer, Executive Assistants' true hours worked are also reflected through other electronic records, including, *inter alia* emails, electronic calendar events, and internal messages.

51.     Additionally, IBM has at various times required Executive Assistants to email their managers or complete electronic worksheets not just logging their overtime, but explaining why they felt compelled to work overtime.

52.     IBM's requirement that Executive Assistants track their time spent on particular tasks and justify their overtime in writing results in Executive Assistants working an even greater number of hours, resulting in additional off-the-clock work.

**ii.     Meal Breaks**

53.     Second, IBM engages in a common pattern and practice of requiring Executive Assistants to work through their unpaid meal breaks.

54.     Specifically, IBM provides Executive Assistants with a 45-minute, unpaid meal break each day, which is automatically deducted from Executive Assistants' paychecks.

55.     However, given their heavy workload, Executive Assistants routinely work through most or all of their unpaid meal breaks without compensation.

**iii.    Inaccurate Wage Statements**

56.     The NYLL also requires that employers, including IBM, issue or provide employees with accurate wage statements with each payment of wages.

57.     IBM has failed to furnish Executive Assistants with accurate wage statements throughout the statutory period.

58.     Indeed, because IBM requires Executive Assistants to work beyond their scheduled shift times and through their lunch breaks, their wage statements rarely if ever reflect their actual hours worked.

59.     As a result of IBM's failure to provide Executive Assistants with accurate wage statements with each payment of wages, the Executive Assistants have suffered concrete harm.

60.     Specifically, the Executive Assistants have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them.

## C.     Plaintiff Cheryl Burgard

61.     Plaintiff was employed by IBM during the entire statutory period until her employment ended in or around February 2023.

62.     Plaintiff's job duties included, *inter alia*: (i) managing IBM executives' calendars; (ii) scheduling client meetings; (iii) coordinating IBM executives' travel; and (iv) submitting expenses on behalf of IBM executives.

63.     While Plaintiff served various IBM executives over the course of her employment, she reported directly to IBM's Global Administration department.

64.     Plaintiff was paid hourly throughout her employment.

65.     As of the end of her employment in February 2023, IBM compensated Plaintiff at a rate of approximately $40.16 per hour.

66.     Plaintiff's scheduled workweek spanned from Monday through Friday.

67.     Plaintiff's scheduled workday ostensibly spanned from approximately 8:30 a.m. through 5:15 p.m. with a 45-minute unpaid lunch break; however, as detailed below, Plaintiff often worked before she arrived at the office, through lunch, after hours, and on weekends.

68.     Plaintiff worked off the clock because IBM made clear that it would not allow her to log significant overtime without retribution.

69.     On several occasions, managers in Global Administration met with Plaintiff, and made clear that, if she logged her true hours worked, it could cost Plaintiff her job.

70.    Plaintiff—like other Executive Assistants—complained both to her managers in Global Administration and to Human Resources about the demands of her role and that management discouraged her from reporting her actual hours worked.

71.    In response, she was met with more baseless critiques of her performance.

72.    IBM also discouraged Plaintiff from reporting her true hours worked and complaining about nonpayment of her wages by issuing her negative performance reviews which had direct financial consequences.

73.    The Company's constant chastising of and retaliation against Plaintiff for working overtime predictably resulted in her working significant hours beyond her scheduled shift times and through her lunch breaks each week to avoid being further penalized.

74.    IBM had actual or constructive knowledge of Plaintiff's hours worked.

75.    IBM maintains electronic records of Plaintiff's true hours worked.

76.    For example, Plaintiff was required  to log her hours via electronic timekeeping software.

77.    IBM also tracked when Plaintiff arrived at and left the office via electronic records of her building badge swipes.

78.    IBM also has records of Plaintiff's shift start and end times for days when Plaintiff worked remotely—*e.g.*, as a result of the COVID-19 pandemic and when performing weekend or after-hours work.

79.    Specifically, Plaintiff was required to log into her IBM email and other accounts via a virtual private network, which created a record of when she logged on and logged off

80.     Given the nature of her work, which was largely done on the computer, Plaintiff's true hours worked are also reflected through other electronic records, including, *inter alia* emails, electronic calendar events, and internal messages.

81.     Additionally, IBM has at various times required Plaintiff to email her managers or complete electronic worksheets not just logging her overtime, but explaining why she felt compelled to work overtime.

82.     Unsurprisingly, this resulted in Plaintiff performing additional off-the-clock work.

83.     Moreover, while IBM provided Plaintiff with a 45-minute, unpaid meal break, Plaintiff consistently worked through at least 30 minutes of her break off the clock.

84.     Time for meal breaks was automatically deducted from Plaintiff's paychecks, even though she often spent most or all of her meal break working.

85.     Finally, Plaintiff was never issued accurate wage statements, as the NYLL also requires.

86.     Indeed, because IBM required Plaintiff to work off the clock, her wage statements rarely if ever reflect her actual hours worked.

87.     As a result of IBM's failure to provide Plaintiff with accurate wage statements with each payment of wages, Plaintiff has suffered concrete harm.

88.     Specifically, for years, Plaintiff was prevented from, *inter alia*: (i) realizing her true hours worked; (ii) realizing that she was underpaid and by how much; and (iii) taking appropriate action to obtain the payments due to her.

## FLSA COLLECTIVE ACTION ALLEGATIONS

89.     Plaintiff brings her FLSA claims as a collective action on behalf of herself and all other similarly situated persons who have been employed by Defendant in the State of New York during the full statute of limitations period (the "FLSA Collective").

90.     At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendant's practice of failing to pay overtime.

91.     At all relevant times, Defendant has been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

92.     Defendant's violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

93.     As a result of its unlawful conduct, Defendant is liable to Plaintiff and the FLSA Collective for the full amount of their unpaid wages with interest, an equal amount as liquidated damages, and reasonable attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

94.     While the exact size of the FLSA Collective is unknown to Plaintiff at this time, upon information and belief, there are approximately 400 members of the FLSA Collective.

95.     Plaintiff is currently unaware of the identities of the individual members of the FLSA Collective.

96.     Accordingly, the Court should require Defendant to provide Plaintiff with a list of all members of the proposed FLSA Collective, along with their last known addresses, telephone

numbers, and email addresses, so Plaintiff may provide the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate.

## CLASS ACTION ALLEGATIONS

97.     Plaintiff brings her NYLL claims as a class action under FRCP 23.

**A.     Class Definition**

98.     Plaintiff seeks to maintain claims, pursuant to FRCP 23, on behalf of herself and a class of all other Executive Assistants who have been employed by IBM in the State of New York at any time during the full statute of limitations period (the "Class").

99.     Plaintiff alleges, on behalf of herself and the Class, that IBM violated the NYLL by, *inter alia*: (i) failing to compensate Plaintiff and the Class at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; (ii) failing to compensate Plaintiff and the Class for all hours worked at their established regular rates of pay; (iii) making unlawful deductions from their wages; and (iv) failing to furnish accurate wage statements.

100.     Plaintiff and the Class have standing to seek class-wide relief under the NYLL because of the adverse effects that IBM's wage practices have had on them individually and as a group.

101.     The wage practices described herein are part of IBM's normal course of conduct.

102.     Pursuant to FRCP 23, Plaintiff's NYLL claims may be pursued by all similarly situated persons who do not opt out of the Class.

**B.     Numerosity and Impracticability of Joinder**

103.     The members of the Class are so numerous that joinder is impracticable.

104.    While the exact number of the members of the Class is unknown to Plaintiff at this time, upon information and belief, there are approximately 600 members of the Class.

105.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C.    Common Questions of Law and Fact**

106.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and predominate over any questions only affecting the members of the Class individually.

107.    The questions of law and fact that are common to Plaintiff and the Class include, without limitation:

(a)    Whether IBM failed to pay Plaintiff and the Class all overtime wages owed to them;

(b)    Whether IBM failed to pay Plaintiff and the Class for all hours worked at their regular rates of pay;

(c)    Whether IBM made unlawful deductions from Plaintiff and the Class' wages;

(d)    Whether IBM failed to furnish accurate wage statements to Plaintiff and the Class; and

(e)    Whether Plaintiff and the Class are entitled to liquidated damages.

108.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**D.    Typicality of Claims and Relief Sought**

109.    Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent.

110.    Plaintiff and the Class work or have worked for IBM, and are or were subject to the same compensation policies and practices.

111.     The wage violations suffered by Plaintiff, and the damages resulting therefrom, are typical of IBM's treatment of the Executive Assistants who comprise the Class.

112.     Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E.     Adequacy of Representation**

113.     Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff's interests are coextensive and aligned with those of the members of the Class.

114.     Plaintiff has no interests adverse to the Class she seeks to represent.

115.     Plaintiff is willing and able to represent the Class fairly and vigorously.

116.     Plaintiff has retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

117.     The combined interests, experience, and resources of Plaintiff and her counsel to competently litigate the   claims at issue in the instant class action satisfy the adequacy of representation requirement of FRCP 23(a).

**F.     Requirements of Rule 23(b)(3)**

118.     The common issues of fact and law affecting Plaintiff's claims and those of the Class—including, without limitation, the common issues identified in the paragraphs above—predominate over issues affecting only individual claims.

119.     A class action is superior to other available means for the fair and efficient adjudication of Plaintiff' claims and those of the Class.

120.     The cost of proving IBM's pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the Class to pursue their claims individually.

121.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the Class (they must have worked for IBM as Executive Assistants in the State of New York during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiff and the FLSA Collective)*

122.    Plaintiff, on behalf of herself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

123.    During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

124.    The FLSA requires covered employers, including Defendant, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

125.    Plaintiff and the FLSA Collective are not exempt from the requirement that their employer pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendant for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

126.    Throughout the full statute of limitations period, Defendant has engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for time spent performing work in excess of 40 hours in a workweek.

127.    As a result of Defendant's failure to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess

of 40 hours in a workweek, Defendant has violated the FLSA and/or applicable regulations thereunder.

128.    Defendant has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA and/or applicable regulations thereunder.

129.    Defendant's violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME
### (*On Behalf of Plaintiff and the Class*)

130.    Plaintiff, on behalf of herself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

131.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

132.    The NYLL requires covered employers, including Defendant, to compensate Employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek for all hours worked in excess of 40 hours in a workweek.

133.    Plaintiff and the Class are not exempt from the requirement that Defendant pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendant for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

134.    Throughout the full statute of limitations period, Defendant has engaged in a policy and practice of failing to compensate Plaintiff and the Class at a rate not less than one and one-half times their regular rate of pay for time spent performing work in excess of 40 hours in a workweek.

135.    As a result of Defendant's failure to compensate Plaintiff and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendant has violated the NYLL and/or applicable regulations thereunder.

136.    Defendant has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

137.    Defendant's violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED
#### (*On Behalf of Plaintiff and the Class*)

138.    Plaintiff, on behalf of herself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

139.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

140.    The NYLL requires covered employers, including Defendant, to compensate Plaintiff and the Class at their established regular rates of pay for all hours worked in a workweek.

141.    Plaintiff and the Class were not exempt from this requirement and are entitled to be paid by Defendant at their established regular rates of pay for all hours worked in a workweek, during the full statute of limitations period.

142.    Throughout the full statute of limitations period, Defendant has engaged in a common policy and practice of failing to pay Plaintiff and the Class at their established regular rates of pay for all hours worked.

143.    As a result of Defendant's failure to compensate Plaintiff and the Class at their established regular rates of pay (or one and one-half times their established regular rates) for all hours worked, Defendant has violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 191.

144.    Defendant has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

145.    Defendant's violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: DEDUCTIONS FROM WAGES**
(*On Behalf of Plaintiff and the Class*)

146.    Plaintiff, on behalf of herself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

147.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

148.    The NYLL prohibits covered employers, including Defendant, from making unlawful deductions from employees' wages.

149.    Plaintiff and the Class were not exempt from this protection.

150.    Throughout the full statute of limitations period, Defendant has engaged in a common policy and practice of making unlawful deductions from Plaintiff and the Class' wages.

151.    As a result of Defendant's unlawful deductions from Plaintiff and the Class' wages, Defendant has violated the NYLL and/or applicable regulations thereunder, *inter alia*, NYLL § 193 and 12 NYCRR 142-2.10.

152.    Defendant has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

153.    Defendant's violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS**
(*On Behalf of Plaintiff and the Class*)

154.    Plaintiff, on behalf of herself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

155.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

156.    The NYLL requires covered employers, including Defendant, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone

number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . and net wages."

157.    Plaintiff and the Class were not exempt from the requirement that Defendant provide them with accurate wage statements.

158.    Throughout the full statute of limitations period, Defendant has engaged in a common policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiff and the Class.

159.    As a result of Defendant's failure to furnish accurate wage statements to Plaintiff and the Class, Defendant has violated, *inter alia*, NYLL § 195.

160.    Defendant has acted willfully and deliberately in maintaining an intentional practice of failing to furnish proper wage statements to Plaintiff and the Class in accordance with the NYLL.

161.    Defendant's violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, the FLSA Collective, and the Class, respectfully requests that the Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal and State law;

B.     Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendant to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

C.     Designate Plaintiff as the representative of the FLSA Collective, and her counsel of record as class counsel;

D.     Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendant's violations of the FLSA, and award those damages against Defendant and in favor of Plaintiff and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

E.     Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendant to provide Plaintiff with a list of all members of the Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to opt out;

F.     Designate Plaintiff as the representatives of the Class, and her counsel of record as class counsel;

G.     Determine the damages sustained by Plaintiff and the Class as a result of Defendant's violations of the NYLL, and award those damages against Defendant and in favor of Plaintiff and the Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Award Plaintiff, the FLSA Collective, and the Class an additional equal amount as liquidated damages because Defendant's violations were without a good faith basis;

I.      Award Plaintiff, the FLSA Collective, and the Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

J.      Grant Plaintiff, the FLSA Collective, and the Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself, the FLSA Collective, and the Class hereby demands a trial by jury on all issues of fact and damages.

Dated: April 16, 2024
        New York, New York

**GRUBIN LAW GROUP, P.C.**

By:  */s/ Alex J. Hartzband*
     Scott G. Grubin
     Alex J. Hartzband

1330 Avenue of the Americas, Suite 23A
New York, New York 10019
Telephone: (212) 653-0631
sgrubin@grubinlaw.com
ahartzband@grubinlaw.com

**VIRGINIA & AMBINDER, LLP**

LaDonna Lusher
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080
llusher@vandallp.com