UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHERYL BURGARD, on behalf of herself and others similarly situated,

                Plaintiff,

-against-

INTERNATIONAL BUSINESS MACHINES CORPORATION,

                Defendant.

**OPINION AND ORDER**

24-CV-02885 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Plaintiff Cheryl Burgard ("Plaintiff"), on behalf of herself and others similarly situated, brings this action against International Business Machines Corporation ("Defendant" or "IBM"), for: (1) failure pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (2) failure pay overtime wages in violation of the New York Labor Law ("NYLL"); (3) failure pay all wages owed in violation of the NYLL; (4) deductions from wages in violation of the NYLL; and (5) inaccurate wage statements in violation of the NYLL. (Doc. 24, "Am. Compl." ¶¶ 126-172).

Pending before the Court is Plaintiff's motion to conditionally certify a collective action under the FLSA. On August 16, 2024, Plaintiff served her motion in accordance with the briefing schedule set by the Court. (Doc. 37; Doc. 38; Doc. 38-2, "Burgard Decl."; Doc. 38-3, "DeChristopher Decl."; Doc. 38-4, "Perrini Decl."; Doc. 38-5, "Roper Decl."; Doc. 38-6, "Bellantoni Decl."; Doc. 38-7, "Taylor Decl."; Doc. 39, "Pl. Br."). Defendant served its opposition on September 6, 2024. (Doc. 40; Doc, 41; Doc. 42, "Def. Br."; Doc. 43; Doc. 44; Doc. 45; Doc. 46; Doc. 47). Plaintiff's motion was fully briefed with the filing of her reply and all motion papers on September 13, 2024. (Doc. 48; Doc 49, "Reply").

For the reasons set forth below, Plaintiff's motion to conditionally certify a collective action under the FLSA is GRANTED.

## BACKGROUND

The allegations herein are taken from Plaintiff's Amended Complaint and declarations in support of her motion, and are considered true for purposes of the extant motion.

IBM, "the largest industrial research organization in the world," is a domestic business corporation with its principal place of business located in Armonk, New York. (Am. Compl. ¶¶ 1, 18, 32). IBM employs approximately 150 Executive Assistants throughout the State of New York, all of which "report directly to IBM's Global Administration department." (*Id.* ¶¶ 33, 35). IBM Executive Assistants are paid hourly, their "typical scheduled workweek spans from Monday through Friday," and their "typical workday ostensibly spans from approximately 8:30 a.m. through 5:15 p.m. with a 45-minute unpaid lunch break." (*Id.* ¶¶ 36-38). IBM permits Executive Assistants to log overtime hours. (*Id.* ¶ 41). IBM compensates its employees "in accordance with 10 Pay Bands," with "most if not all" Executive Assistants "fall[ing] within Pay Band 4 or Pay Band 5." (Burgard Decl. ¶¶ 24-25).

Plaintiff was employed by IBM from approximately 1986 to February 2023 as an Executive Assistant. (*Id.* ¶¶ 2-3). Plaintiff, during her employment, "report[ed] directly to IBM's Global Administration department" in Armonk, New York. (Am. Compl. ¶ 35; Burgard Decl. ¶ 3). Her typical scheduled shift was Monday through Friday from approximately 8:30 a.m. to 5:15 p.m., with a 45-minute lunch break. (*Id.* ¶ 7). Plaintiff, however, "typically worked approximately 10 to 12 hours per day, five days per week." (*Id.* ¶ 9). She also typically "worked approximately 5 to 10 hours on weekends." (*Id.*).

Plaintiff alleges that IBM maintained a policy of not paying Executive Assistants, herself included, for off-the-clock overtime work. (*See, e.g.*, Am. Compl. ¶¶ 2-3, 40). Plaintiff alleges that

IBM "discourages and retaliates against Executive Assistants from reporting their true hours worked." (*Id.* ¶ 41). Plaintiff alleges that these acts of discouragement and retaliation, in turn, forced "Executive Assistants [t]o not report their true hours worked." (*Id.* ¶ 43; Burgard Decl. ¶ 13). Plaintiff also alleges that IBM knew the exact hours she and other Executive Assistants worked because IBM tracked work hours in "various ways." (*Id.* ¶ 15). For instance, Plaintiff, when working remotely, was "required to log into IBM's virtual private network[,] which create[d] a record of when [she] logged on and off." (*Id.* ¶ 17).

Since Plaintiff commenced this action in April 2024 (Doc. 1), eight other former or current IBM Executive Assistants have also opted into this action. (Docs. 9, 11, 17, 20, 34).

## ANALYSIS

Plaintiff seeks to conditionally certify a collective of "[a]ll current and former Executive Assistants of [IBM] . . . in the State of New York who have worked more than forty (40) hours per week, including on the clock work and off the clock work, at any time between July 25, 2021 and today." (Doc. 38-8; Pl. Br. at 7).[1]

The stated objective of the FLSA is to "eliminate," for those industries within its purview, "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." 29 U.S.C. §§ 202(a)-(b). To this end, the FLSA mandates, *inter alia*, that covered employers pay a specific minimum wage and a specific rate for overtime compensation. 29 U.S.C. §§ 206, 207. Should an employer fail to comply with these obligations, the statute permits the impacted employee to bring an action "against any employer . . . in any Federal or State court of competent jurisdiction . . . for and in behalf of [her]self . . . and other employees similarly situated." 29 U.S.C. § 216(b). Claims under the FLSA

---

[1] Citations to the parties' briefs correspond to the pagination generated by ECF.

are subject to a two-year statute of limitations unless they were "willful," in which case the statute recognizes a three-year period. 29 U.S.C. § 255(a). An individual "commences" an action either "(a) on the date the complaint is filed, if [s]he is specifically named as a party in the complaint and [her] written consent to become a party plaintiff is filed . . . or (b) . . . on the subsequent date on which such written consent is filed . . . ." 29 U.S.C. § 256.

The Second Circuit has explained that 29 U.S.C. § 216(b), the provision which allows a plaintiff to bring an action on behalf of [her]self and others, "establishes a right . . . to bring an action by or on behalf of any employee, and a *right* of any employee to become [a] party plaintiff to such an action, so long as certain preconditions are met." *Scott v. Chipotle Mex. Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (alterations in original, internal quotation marks omitted).[2] "Although they are not required to do so by the FLSA, district courts have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alterations in original, internal quotation marks omitted). Courts in the Second Circuit follow a two-step analysis when determining whether to certify a collective action under 29 U.S.C. § 216(b):

> At step one, the district court permits notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others were victims of a common policy or plan that violated the law. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs.

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

4

*Scott*, 954 F.3d at 515 (quoting *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2015)).

The first stage of the analysis outlined above, commonly referred to as "conditional certification" and at issue here, asks the Court to "determine *whether* similarly situated plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citation omitted). As such, without resolving factual disputes or assessing the merits of the case, the Court's task "is to ascertain whether the plaintiff has made the modest factual showing that [s]he and the potential opt-in plaintiffs were victims of a common policy or plan that violated the law." *Aguilo v. Vails Gate Cleaners Inc.*, No. 18-CV-8850, 2020 WL 3545558, at *3 (S.D.N.Y. June 30, 2020). Plaintiff may meet this "modest factual showing" with reference to her "own pleadings, affidavits, and declarations, including any hearsay statements contained therein" and the Court is required to "draw all inferences in [her] favor" without resolving credibility or factual disputes. *Chen v. Kicho Corp.*, No. 18-CV-07413, 2020 WL 1900582, at *6 (S.D.N.Y. Apr. 17, 2020). While this "fairly lenient standard" means that "courts typically grant[] conditional certification," *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017) (alterations in original, internal quotation marks omitted), the outcome is not preordained. "[T]he plaintiff must offer substantial allegations demonstrating a factual nexus between [herself] and the potential opt-in plaintiffs." *Aguilo*, 2020 WL 3545558, at *3.

I. <u>Conditional Certification</u>

Plaintiff, to meet her modest burden under *Myers*, submits her own her own declaration identifying her position, pay, and typical weekly work schedule. (Burgard Decl. ¶¶ 3, 5, 7, 9). She asserts, under penalty of perjury, that she regularly worked more than forty-hour weeks, but Defendant knowingly failed to pay her for overtime. (*Id.* ¶¶ 6, 8-9, 13). She further asserts that

5

Defendant deployed a policy of discouraging employees from recording all their time spent working through threats and retaliation. (*Id.* ¶¶ 10-13). She also identifies other IBM Executive Assistants, all of which worked the same typical weekly work shifts as Plaintiff, who were "discouraged and/or retaliated against for reporting [their] true working hours." (*Id.* ¶¶ 7, 21-23, 33-34). The other Executive Assistants that Plaintiff spoke with included both Pay Bands 4 and 5, both of which "work[ed] closely with one another to make sure the executive's needs were met." (*Id.* ¶¶ 28-33).

Moreover, Plaintiff submitted declarations of five opt-in plaintiffs. All of these opt-in plaintiffs were or continue to be Executive Assistants at IBM. (DeChristopher Decl. ¶ 3; Perrini Decl. ¶ 3; Roper Decl. ¶ 3;[3] Bellantoni Decl. ¶ 3; Taylor Decl. ¶ 3). All the opt-in plaintiffs shared the same typical weekly work shift as Plaintiff. (DeChristopher Decl. ¶ 7; Perrini Decl. ¶ 7; Roper Decl. ¶ 8; Bellantoni Decl. ¶ 7; Taylor Decl. ¶ 7). All the opt-in plaintiffs similarly attest to working more than forty-hour weeks without getting paid for overtime. (DeChristopher Decl. ¶ 6; Perrini Decl. ¶¶ 6, 8; Roper Decl. ¶ 7; Bellantoni Decl. ¶ 6; Taylor Decl. ¶ 6). All of these opt-in plaintiffs attest to their superiors at IMB threatening or retaliating against them for recording working overtime. (DeChristopher Decl. ¶¶ 10-14; Perrini Decl. ¶¶ 10-13; Roper Decl. ¶¶ 10-13; Bellantoni Decl. ¶¶ 9-13; Taylor Decl. ¶¶ 9-13). And all of these opt-in plaintiffs attest to speaking with other

---

[3] Defendant argues that opt-in plaintiff Roper's "FLSA claims are time-barred and her testimony should be disregarded." (Def. Br. at 12 & n.2). However, even if Defendant is correct that opt-in plaintiff Roper's claims are time barred, the Court may still consider her declaration for the purpose of evaluating whether Plaintiff has met her burden for conditional certification. *See Lazaar v. Anthem Companies, Inc.*, 678 F. Supp. 3d 434, 441 (S.D.N.Y. 2023) ("Equally meritless is the defendants' argument that the plaintiff's declarations should be ignored because the declarants worked for Anthem outside the period the plaintiff proposes for the putative collective. . . . Affidavits of workers whose employment falls outside the statutory period are probative of employers' wage and hour practices and they may corroborate the claims of more recent violations." (collecting cases)).

Executive Assistants who were not paid for overtime work. (DeChristopher Decl. ¶¶ 21-22; Perrini Decl. ¶ 20; Roper Decl. ¶ 21; Bellantoni Decl. ¶¶ 20-21; Taylor Decl. ¶ 20).

Taken together, the Court concludes that Plaintiff has satisfied her "modest" burden of showing that "similarly situated" individuals exist—namely, other Executive Assistants working for IBM in New York—and that they were "victims of a common policy or plan that violated the law"—specifically, Defendant knowingly failed to pay its New York Executive Assistants overtime wages. *Myers*, 624 F.3d at 554-55; *see also Mata v. Foodbridge LLC*, No. 14-CV-08754, 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit."); *Vilella v. Pup Culture LLC*, No. 23-CV-02291, 2023 WL 7986562, at *4 (S.D.N.Y. Nov. 17, 2023) ("Courts have found that conditional certification is appropriate where the plaintiff avers that other employees worked more than forty hours a week but were not paid overtime."); *Son v. Hand Hosp.*, No. 22-CV-04639, 2025 WL 524026, at *8 (S.D.N.Y. Feb. 18, 2025) (finding that the other "employees [that] have each provided sworn declarations" "corroborate[d]" the plaintiff's allegations).

Defendant's two principal arguments to the contrary are unpersuasive. First, Defendant argues that Plaintiff's alleged "common policy" is neither "unlawful" nor "common." (Def. Br. at 14-20). To that end, Defendant challenges Plaintiff's purported "boilerplate" and "vague[]" evidence (*id.* at 16), submits various IBM performance evaluations of Plaintiff and opt-in plaintiffs (Docs. 41, 46),[4]

---

[4] Defendant filed copies of the performance evaluations under seal (Doc. 41 - Doc. 41-20) and contemporaneously filed a letter motion to seal (Doc. 40). Plaintiff did not oppose Defendant's motion and purportedly "requested that IBM file these documents under seal." (*Id.*). Both parties appear to agree that the performance evaluations are "sensitive information requiring caution." (*Id.*). The Court finds that Defendant has satisfied the standards articulated by the Second Circuit in *Lugosch v. Pyramid Co. of Onondaga*, 435 F. 3d 110, 120 (2d Cir. 2006). *See Hernandez v. Off. of Comm'r of Baseball*, No. 18-CV-

and offers competing employee declarations (Docs. 44, 45). But, at this stage of the proceedings, "the court does not resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014); *see also Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) ("[I]f the plaintiff's allegations are sufficient on their face to support conditional certification, a defendant may not defeat the plaintiff's motion by presenting conflicting factual assertions."); *Garcia v. Chipotle Mexican Grill, Inc.*, No. 16-CV-00601, 2016 WL 6561302, at *6 (S.D.N.Y. Nov. 4, 2016) ("[C]ourts in this Circuit have found that competing declarations should not be considered at this juncture." (collecting cases)); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y.2005) ("The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated.")

Second, Defendant argues that the Court should "limit the collective to [1] Band 4 Executive Assistants in New York who [2] reported to the same three managers as Plaintiff." (Def. Br. at 20). With respect to Defendant's proposed limitation based on reporting to three specific managers, Defendant states that such a limitation is appropriate here because Plaintiff's allegations only "involve isolated managers." (*Id.*). But Plaintiff's allegations are not so narrow. Plaintiff explicitly alleges that IBM knowingly permitted New York Executive Assistants to work off-the-clock hours without providing overtime pay, not just that certain managers threatened Executive Assistants who recorded overtime. (*See, e.g.*, Am. Compl. ¶¶ 44, 76, 84; Burgard Decl. ¶¶ 17-19). She alleges that all Executive Assistants "report directly to" IBM's Global Administration. (Am.

---

09035, 2021 WL 1226499, at *12 (S.D.N.Y. Mar. 31, 2021) (granting motion to seal employment performance evaluations). Accordingly, Defendant's motion to seal (Doc. 40) is granted.

Compl. ¶ 35). And she alleges that she was warned about directions from IBM's "Global Administration." (Burgard Decl. ¶ 11). The Court therefore sees no reason, at this stage, to narrow the collective to Executive Assistants in New York who reported to Plaintiff's three managers. *Cf. Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) ("In this Circuit, courts have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice.").

With respect to Defendant's pay band argument, Defendant asserts that Band 5 Executive Assistants "shoulder significantly more responsibility, have higher expectations, and exercise more initiative and judgment than the Band 4 employees." (Def. Br. at 21-23). This argument, however, is not persuasive in this procedural posture. "The fact that different employees performed different jobs . . . does not necessarily preclude them from being considered 'similarly situated' where the fundamental allegation . . . is common to all the . . . plaintiffs and dominates each of their claims." *Ruiz v. Truffa Pizzeria & Wine Room Corp.*, No. 20-CV-08645, 2021 WL 568249, at *5 (S.D.N.Y. Feb. 15, 2021) (second and third alteration in the original); *see also Vilella*, 2023 WL 7986562, at *4 ("[I]t is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs . . . [a]s long as they were all similarly *situated with respect to being subject to the same policy* . . . and there exists a factual nexus among the plaintiffs." (alteration and emphasis in the original; quoting *Martinenko v. 212 Steakhouse Inc.*, No. 22-CV-00518, 2022 WL 1227140, at *5 (S.D.N.Y. Apr. 26, 2022))). Here, as explained *supra*, Plaintiff has met her modest burden of demonstrating that all New York Executive Assistants were subject to Defendant's common policy of knowingly not compensating such employees for

overtime work. To that end, Defendant concedes that both Pay Bands 4 and 5 Executive Assistants hold the same title, have the same scheduled work shifts, and are overtime eligible. (Def. Br. at 9-10).

Accordingly, at this conditional stage, the low bar to certification has been met by Plaintiff.

II. Class Notice

The Court next turns to Plaintiff's proposed class notice. Defendant challenges: (1) Plaintiff's proposed manner of dissemination of the class notice; and (2) the content of the notice. (Def. Br. at 23-28).

A. Manner of Notice

Plaintiff seeks to disseminate the notice via certified mail and email, text message, and posting at IBM's workplace. (Pl. Br. at 20). Defendant argues that the Court "should limit any notice to first class mail and personal email." (Def. Br. at 25). The Court agrees.

"Courts allow notice by text where the nature of the employer's business facilitated a high turnover rate among employees." *Taylor v. R.J.T. Motorist Serv., Inc.*, No. 19-CV-01155, 2020 WL 4937483, at *6 (S.D.N.Y. Aug. 24, 2020). Plaintiff makes no attempt to meet this standard. To the contrary, Plaintiff's evidence demonstrates that Executive Assistants who work at IBM's New York offices typically hold their positions for years. (*See, e.g.*, Burgard Decl. ¶ 2 ("I was employed by . . . [IBM] from approximately 1986 to February 2023."); Roper Decl. ¶ 2 ("I was employed by . . . [IBM] from approximately 1985 to November 2021.")). Notice via text message is therefore inappropriate and will not be permitted.

"Whether to post notice in employee common areas is [an] issue on which courts in this district tend to split." *Islam v. LX Ave. Bagels, Inc.*, No. 18-CV-04895, 2019 WL 5198667, at *11 (S.D.N.Y. Sept. 30, 2019) (collecting cases). The Court, however, "appreciates 'the potential

10

disruption that can occur in the employer-employee relationship when an employer is required to post a notice in the workplace announcing that one or more employees have accused it of violating the law.'" *Id.* (quoting *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 668 (S.D.N.Y. 2017)). Plaintiff has failed to explain why notice via posting is necessary; she has provided the Court with no basis for the Court to conclude that there will be a problem reaching employees through certified mail and email. Thus, notice via posting at the place of employment will also not be permitted.

      B.  Content of Notice

The parties disagree on the proper content of the notice and consent form. (*Compare* Def. Br. at 23-25, *with* Reply at 13). The parties are directed, in light of the rulings contained herein, to meet and confer regarding the content of the notice and consent form. The parties shall, within 21 days of the date of this Opinion and Order, file a joint letter with the Court presenting the agreed-upon notice and consent form or advising that the parties were unable to reach an agreement. If the parties are unable to agree, the joint letter shall be no more than five pages, double-spaced, explaining briefly the point(s) of disagreement. The Court will then determine the content of the notice and consent form. *See Taylor*, 2020 WL 4937483, at *6 (requiring a similar process to resolve disputes over the proper content of the class notice and consent form); *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 18 (W.D.N.Y. 2020) (same).

III.  Equitable Tolling

Plaintiff requests that the Court should toll the "statute of limitations for the putative FLSA Collective from July 25, 2024, the date Plaintiff filed her pre-motion conference letter regarding the instant motion . . . until the close of any Court-ordered opt-in period." (Pl. Br. at 22). Tolling is necessary, Plaintiff argues, because "FLSA Collective members' claims will continue to expire

prior to their receiving notice of this lawsuit and being provided with the opportunity to seek recoverable damages for unpaid wages." (*Id.* at 23). Defendant opposes, arguing that Plaintiff has not demonstrated "exceptional" circumstances to warrant equitable tolling. (Def. Br. at 28-29).

"To qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented [him] from filing [his] claim on time and that []he acted with reasonable diligence throughout the period []he seeks to toll." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").

The Court concludes that equitable tolling is not appropriate for two distinct reasons. First, Plaintiff has made no showing of "extraordinary circumstances." Plaintiff does not, for instance, allege that Defendant "actively concealed the existence of a cause of action from the [opt-in] plaintiffs." *Son*, 2025 WL 524026, at *12. Nor is the delay between Plaintiff's motion and this Opinion and Order "extraordinary." *Cf. Mark v. Gawker Media LLC*, No. 13-CV-04347, 2014 WL 5557489, at *3 (S.D.N.Y. Nov. 3, 2014) (11-month delay not sufficiently "extraordinary" to warrant equitable tolling); *Vasto v. Credico (USA) LLC*, No. 15-CV-09298, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) ("[L]ess than seven months have passed since plaintiffs filed their original motion for conditional certification in the Northern District of Illinois, and less than five months have passed since plaintiffs renewed their motion in this District. Such delay is not of a magnitude that would justify tolling.").

Second, Plaintiff fails to provide any details about potential opt-in plaintiffs who intend to join the collective but risk becoming time barred. Plaintiff's application is thus not connected to

her rights but, rather, seeks to prevent "prejudice" to unknown individuals not a party to this action. "This request for wholesale equitable tolling is denied." *Taylor*, 2020 WL 4937483, at *4. That portion of Plaintiff's application is denied.

IV.  Production of Contact Information

Finally, with respect to contacting the collective, Plaintiff seeks production of "the names, last known addresses, mobile telephone numbers, email addresses, and dates of employment of all Executive Assistants employed by Defendants in the State of New York for a period of three years prior to the filing of the Complaint, in a computer-readable list." (Pl. Br. at 21). Defendant does not object to this request. (*See generally* Def. Br.).

"Courts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification." *Tate v. WJL Equities Corp.*, No. 13-CV-08616, 2014 WL 2504507, at *2 (S.D.N.Y. June 3, 2014) (collecting cases); *see also Kicho Corp.*, 2020 WL 1900582, at *9 (same); *Yuefeng Shi v. TL & CG Inc.*, No. 19-CV-08502, 2020 WL 4586359, at *5 (S.D.N.Y. Aug. 10, 2020) (same). Indeed, "courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with conditional certification of a FLSA collective action." *Aguilo*, 2020 WL 3545558, at *10.

Discovery is well underway in this matter. (Doc. 33). Accordingly, to the extent that Defendant has not already produced this information in discovery, the Court grants Plaintiff's request for the production of names, addresses, and telephone numbers of the potential opt-in plaintiffs. Defendant shall promptly produce such information to Plaintiff's counsel.

## **CONCLUSION**

Based upon the foregoing, Plaintiff's motion to conditionally certify a collective action under 29 U.S.C. § 216(b) is GRANTED.

The conditionally certified collective is defined as all current and former Executive Assistants of IBM in the State of New York who have worked more than forty (40) hours per week, including on the clock work and off the clock work within three years of the date notice is transmitted. Plaintiff's request for equitable tolling is denied. Defendant, to the extent that it has not already done so in discovery, shall promptly provide Plaintiff with a computer-readable file of the names, last known addresses, mobile telephone numbers, email addresses, and dates of employment of all Executive Assistants employed by Defendants in the State of New York for a period of three years before the filing of the Complaint. Defendant's motion to seal (Doc. 40) is granted.

The parties are directed to confer regarding the content of the notice and consent form in accordance with the directive above.

The Clerk of the Court is respectfully directed to terminate the pending motion sequences at Doc. 37 and Doc. 40.

**SO ORDERED:**

Dated:   White Plains, New York
         March 12, 2025

_____
PHILIP M. HALPERN
United States District Judge