UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHERYL BURGARD, on behalf of herself and others similarly situated,

Plaintiff,

-against-

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant.

**OPINION & ORDER**

24-CV-02885 (PMH)

PHILIP M. HALPERN, United States District Judge:

Cheryl Burgard ("Burgard" or "Plaintiff"), individually and on behalf of others similarly situated, commenced this collective action against International Business Machines Corporation ("IBM" or "Defendant") on April 16, 2024. (Doc. 1). Plaintiff filed her Amended Complaint, the operative pleading, on June 26, 2024. (Doc. 24, "Am. Compl.").[1] Plaintiffs press claims against Defendant for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (*Id.*).

Defendant filed an Answer to the Amended Complaint on July 9, 2024, and the case proceeded to discovery. (Doc. 26, "Ans."). Discovery closed on April 30, 2025. (Doc. 59).

Pending before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on October 20, 2025. Defendant filed its motion for summary judgment seeking dismissal of Burgard's claims, and dismissal of the opt-in plaintiffs'

[1] The Court, on March 12, 2025, conditionally certified the collective, which is defined as all current and former Executive Assistants of IBM in the State of New York who have worked more than forty (40) hours per week, including on the clock work and off the clock work within three years of the date notice is transmitted. (*See* Doc. 64). Currently, there are nineteen opt-in plaintiffs (together, with Plaintiff, "Plaintiffs"). (*See* Docs. 64, 72, 79, 84, 92, 93, 94, 97, 103).

claims without prejudice. (Doc. 111; Doc. 112, "Def. Br."; Doc. 113;[2] Doc. 117, "Yost Decl."; Doc. 118, "Zahler Decl."; Doc. 119, "Spear Decl."; Doc. 120, "Regan Decl."; Doc. 121, "Adams Decl."; Doc. 123, "Hewitt Decl."). Plaintiffs filed their motion for summary judgment, seeking dismissal of Defendant's second affirmative defense, and opposing Defendant's motion. (Doc. 106; Doc. 107, "Pl. Br."; Doc. 110, "Miller Decl."; Doc. 122, "Skroly Decl."). Defendant filed reply and opposition to Plaintiffs' motion (Doc. 124, "Def. Reply"), and Plaintiffs filed reply (Doc. 108, "Pl. Reply").[3]

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Plaintiffs' motion for summary judgment is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendant's Rule 56.1 Statement of Undisputed Material Facts with responses, Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts with responses, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

Burgard began working for IBM in October 1986. (Def. 56.1 Stmt. ¶ 1). Burgard, from April 16, 2018 through August 26, 2022, was an Executive Administrative Assistant ("EAA"). (*Id.* ¶ 2). EAAs were treated by IBM as non-exempt employees, that is, IBM determined that they were eligible for overtime pay. (Pl. 56.1 Stmt. ¶¶ 18, 20). Burgard, as an EAA, was scheduled to work from 8:30 a.m. to 5:15 p.m., including a 45-minute unpaid lunch break. (Def. 56.1 Stmt. ¶

[2] For the sake of clarity, the Court refers to Defendant's Statement of Undisputed Material Facts (Doc. 113 at 1-15) as "Def. 56.1 Stmt." and Plaintiff's Statement of Undisputed Material Facts (Doc. 113 at 15-25) as "Pl. 56.1 Stmt."

[3] The parties, in accordance with the Court's Individual Practices, filed a number of exhibits under seal. The parties' joint request to seal these exhibits (Doc. 109) is granted.

6). Plaintiffs' duties as EAAs encompassed managing calendars, including scheduling meetings and travel; handling expense reimbursements; administrative tasks, such as scanning, typing, and filing; and providing support for correspondence and communications. (Pl. 56.1 Stmt. ¶¶ 24-30). Burgard testified that her position could require her to prioritize meetings based on "the subject and the level of the meeting." (Yost Decl., Ex. A, "Burgard Dep. Tr." at 155:7-156:13). Burgard would also "assist assistants . . . on [her] team if they had any questions about the Think Lab or space that was required." (*Id.* at 157:5-9). However, EAAs were not managers. (Pl. 56.1 Stmt. ¶ 3). Burgard, between 2018 and 2022, provided administrative support for various IBM executives, including Nguyen Strattner, Sriram Raghavan, and Dario Gil, all vice presidents at IBM. (Def. 56.1 Stmt. ¶ 17).

Plaintiffs were paid 1.5 times their hourly rate for time they worked in excess of 40 hours in a given week. (Pl. 56.1 Stmt. ¶ 21). Burgard worked, and was paid for, significant amounts of overtime during her tenure at IBM—she reported 409.25 hours of overtime in 2019, 243.25 in 2020, 386.50 in 2021, and 343.50 in 2022. (Def. 56.1 Stmt. ¶ 39). Defendant took note of Burgard's high overtime hours—for instance, in 2022, Sandra Paunksniene, Burgard's manager, emailed Burgard: "You were asked to reduce overtime during the GSS transition in March 2022, however at the end of the quarter your overtime is significantly high." (*Id.* ¶ 49). Burgard testified that "[t]here [were] times that [she] told [Ms. Paunksniene] that [she] worked and did not report it." (Burgard Dep. Tr. at 193:5-9). Plaintiffs also claim that management would often schedule trainings during lunch breaks, referred to as "lunch and learns." (Def. 56.1 Stmt. ¶ 7). Burgard, for her part, emailed Ms. Paunksniene, on at least one occasion, that she worked through lunch, but did not report all of her time worked. (*See* Miller Decl., Ex. F).

Burgard, from 2018 to 2021, received the highest possible ratings in her performance reviews. (Def. 56.1 Stmt. ¶ 47). Also in 2022, Teresa Skroly, IBM's General Administration North America Leader, told Burgard that she had roughly three times the amount of overtime as other executive administrative assistants over the prior six months. (*Id.* ¶ 48). Ms. Skroly never told Burgard not to record the hours that she actually worked. (*Id.*). Burgard, in 2022, received negative performance reviews. (*Id.*). She testified that IBM's Human Resources department told her that her negative reviews were to send her a message that "they didn't want the overtime," because management was "constant[ly] calling and badgering" regarding why Plaintiff had so many overtime hours. (*Id.*; Burgard Dep. Tr. at 296:21-297:15).

This litigation followed.

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the

evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is not the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Harford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her . . . claim, the District Court properly

granted summary judgment dismissing that claim."). Simply put, the movant must separately establish that the law favors the judgment sought.

Cross-motions for summary judgment do not alter the basic standard. *McGowan v. Stanley*, No. 23-7769-CV, 2024 WL 5038633, at *1 (2d Cir. Dec. 9, 2024). "When both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023). Where, as here, the parties have cross-moved for summary judgment, a reviewing court evaluates each party's motion "on its own merits," and draws all reasonable inferences "against the party whose motion is under consideration." *Id.* (quoting *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

## ANALYSIS

Plaintiffs press five claims for relief: (1) failure to pay overtime under the FLSA; (2) failure to pay overtime under the NYLL; (3) failure to pay all wages owed under the NYLL; (4) deductions from wages under the NYLL; and (5) inaccurate wage statements under the NYLL. (Am. Compl. ¶¶ 126-72). Defendant moves for judgment as a matter of law on all of Burgard's claims. (Doc. 106). Plaintiffs move for summary judgment on Defendant's second affirmative defense—that Plaintiffs are exempt from the overtime requirements of the FLSA and NYLL. (Doc. 111). The Court shall consider Plaintiffs' motion first.

### I. Administrative Exemption

Plaintiffs seek summary judgment striking Defendant's second affirmative defense, arguing that Defendant cannot meet its burden of proving Plaintiffs are exempt from overtime pay under the administrative exemption. (Pl. Br. at 10).[4] Defendant also moves for summary judgment

[4] Citation to specific pages of filings on the docket correspond to the pagination generated by ECF.

on all of Burgard's claims as exempt under the administrative exemption. (Def. Br. at 27). If the administrative exemption applies, then Plaintiffs were ineligible for overtime pay. If the administrative exemption does not apply, then Plaintiffs were eligible for such pay. Because Defendant cannot meet the third element of the administrative exemption with respect to any of the Plaintiffs, the Court agrees with Plaintiffs that Defendant's second affirmative defense fails as a matter of law. Necessarily, Defendant's motion in this regard fails.

"Under both the FLSA and NYLL employees who serve 'in a bona fide executive, administrative, or professional capacity' are not entitled to overtime pay." *Suarez v. Big Apple Car, Inc.*, 806 F. App'x 19, 21 (2d Cir. 2020) (summary order) (first citing 29 U.S.C. § 213(a)(1); and then citing NYLL § 615(5)). "[T]he employer invoking the exemption bears the burden of proving that its employees fall within the exemption.'" *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-00588, 2012 WL 1638326, at *3 (S.D.N.Y. May 8, 2012) (alteration in original) (quoting *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010)). Nevertheless, courts are to give the exemptions "a fair reading." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018).

The administrative exemption "applies to employees (1) who earn a salary of at least $684 per week; (2) '[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers'; and (3) '[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'" *Suarez*, 806 F. App'x at 21 (alterations in original) (quoting 29 C.F.R. § 541.200(a)). Under the NYLL, the employee also must "(4) 'regularly and directly assist[] an employer, or an employee employed in a bona fide executive or administrative capacity' or 'perform[], under only general supervision, work along specialized or

technical lines requiring special training, experience or knowledge.'" *Id.* at 21-22 (alterations in original) (quoting 12 N.Y.C.R.R. § 142-2.14(c)(4)(ii)(c)).

The parties dispute all three FLSA factors.[5] However, if Defendant fails to produce sufficient evidence for even one of the factors, then the administrative exemption does not apply, *see Coker v. Goldberg & Associates P.C.*, No. 21-CV-01803, 2024 WL 869412, at *4 (S.D.N.Y. Feb. 29, 2024), and the Court finds that Defendant has failed to produce sufficient evidence for, at a minimum, the third factor.

The third factor asks whether Plaintiffs' primary duties include "the exercise of discretion and independent judgment with respect to matters of significance." *Suarez*, 806 F. App'x at 21. "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). The regulations promulgated by the Secretary of Labor list "[f]actors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance":

> [W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the

[5] Neither party addresses the fourth factor exclusive to the NYLL. (*See* Def. Br.; Pl. Br.).

> employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(b). "The exercise of discretion and independent judgment . . . does not include clerical or secretarial work . . . ." *Id.* § 541.202(e).

Here, it is undisputed that Plaintiffs' "main job duties are calendar, travel, expenses, administrative tasks, and correspondence/communication support." (Pl. 56.1 Stmt. ¶ 24). Defendant has proffered evidence that Plaintiffs exercised some discretion and independent judgment in their job duties. (*See, e.g.*, Burgard Dep. Tr. at 155:7-156:13 (testifying that she would prioritize meetings based on "the subject and the level of the meeting")). However, Defendant has failed to show that the little discretion and independent judgment Plaintiffs did exercise, concerned "matters of significance." The matters over which Plaintiffs exercised discretion are not the kind of "matters of significance" contemplated by the regulations. *See* 29 C.F.R. § 541.202(b). Moreover, Plaintiffs' primary duties were quintessential "secretarial work." *Id.* § 541.202(e). Thus, Plaintiff did not "exercise discretion over matters of significance" and are not subject to the administrative exemption.

Other courts in this circuit have found that secretaries and administrative assistants with similar levels of discretion are not subject to the administrative exemption. *See, e.g.*, *Coker*, 2024 WL 869412, at *4 (holding executive assistant was not subject to administrative exemption where, "[a]t the very least, Plaintiff's primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance." (citation modified)); *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-00588, 2012 WL 1638326, at *4 n.5 (S.D.N.Y. May 8, 2012) (finding, on motion to dismiss, that secretary was not subject to administrative exemption because he "was hired to perform various secretarial duties as designated by partners.").

The cases cited by Defendant (Def. Reply at 23) are not persuasive. For instance, in *Dineley v. Coach, Inc.*, No. 16-CV-03197, 2017 WL 2963499, at *6 (S.D.N.Y. July 11, 2017), the court found that the plaintiff, an executive assistant, could be subject to the administrative exemption where "[h]er salary was approximately double that of the non-exempt administrative assistants over whom she shared supervisory responsibilities" and she was "the person given primary responsibility for supervising and delegating work to two administrative assistants . . . ." Here, Defendant has proffered no evidence that Plaintiffs "supervised" other administrative assistants. Indeed, Defendant admitted that "the EAA position has always been a non-managerial role." (Pl. 56.1 Stmt. ¶ 3). Likewise, *Sorrentino v. Stephen P. Esposito, M.D., P.C.*, No. 08-CV-01870, 2010 WL 11627323, at *1 (E.D.N.Y. Jan. 7, 2010), concerned an "office manager" or "practice administrator" whose duties included, "supervising billing, processing accounts receivable, managing the facilities, managing human resources, scheduling employees, processing payroll, and maintaining the office equipment." These duties, unlike Plaintiffs' primary duties, are among the duties contemplated by the regulations as "matters of significance" and are not merely "secretarial work." *See id.* at *4-6. And in *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F. Supp. 2d 288, 301-02 (S.D.N.Y. 2005), the plaintiff's "salary was significantly higher than other non-exempt assistants" and the plaintiff made recommendations to the president of the company regarding personnel matters.

Indeed, in *Seltzer*, the court found persuasive that Defendant "had procedures and policies in place whereby certain assistants were classified as exempt and certain were classified as non-exempt." *Id.* at 302. So too, the Court finds persuasive Defendant's classification of Plaintiffs as non-exempt. (*See* 56.1 Stmt. ¶ 2; CntrStmt. ¶ 16). Deborah Adams, Defendant's Director of Human Resources for its Transformation and Operations Organization and 30(b)(6) witness testified:

> Q: And earlier today, you said that executive administrative assistants are in either Band 4 or Band 5 correct?
> A: Yes, that's what I understand.
> Q: And the band determinations of 4 and 5 for the executive administrative assistant have been consistent throughout the relevant time period; correct?
> A: It is my understanding, yes.
> Q: And as they are in Bands 4 and 5, IBM has determined that this is a position that is covered by the overtime provisions of the federal Fair Labor Standards Act; correct?
> A: Yes

(Yost Decl., Ex. E, "Adams Dep. Tr." at 105:24-106:13). Defendant's classification of Plaintiffs is not determinative, but is persuasive evidence that the Court may consider. *See Seltzer*, 356 F. Supp. 2d at 302 (considering that the defendant "had procedures and policies in place whereby certain assistants were classified as exempt and certain were classified as non-exempt."); *cf. Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) (stating, in the context of an employer's classification of workers as independent contractors versus employees, that "an employer's admission that his workers are employees covered by the FLSA is highly probative." (citing *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 258 n.5 (5th Cir. 1987)).

Finally, Defendant's argument that the regulations mandate a different result is not convincing. (Def. Reply at 20). The regulation cited by Defendant states: "An executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, *has been delegated authority regarding matters of significance*." 29 C.F.R. § 541.203(d) (emphasis added). Here, as discussed above, Defendant has not proffered sufficient evidence to make this showing.

Accordingly, Plaintiffs' motion for summary judgment dismissing Defendant's second affirmative defense is granted and Defendant's motion for summary judgment is denied to the extent it seeks summary judgment in its favor on this defense.

II. First and Second Claims for Relief – Unpaid Overtime

Burgard's first and second claims for relief are for failure to pay overtime under the FLSA and NYLL, respectively. (Am. Compl. ¶¶ 126-141).

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove [1] that he performed work for which he was not properly compensated, and [2] that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011)." The NYLL applies the same standard. *See Barahona v. Hebrew Acad. of the Five Towns & Rockaway*, 825 F. Supp. 3d 124, 134 (E.D.N.Y. Feb. 11, 2026).

"An employer who has knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008). "[T]he Supreme Court has rejected the argument that an employer may avoid its obligations under the Act upon proof that its employees voluntarily engaged in inadequately compensated work." *Id.* at 289 (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985)). "In other words, once it is established that an employer has knowledge of a worker's overtime activities and that those activities constitute work under the Act, liability does not turn on whether the employee agreed to work overtime voluntarily or under duress." *Id.* at 290.

Defendant's principal contention with respect to Burgard's unpaid overtime claims is that it had no knowledge, actual or constructive, that Burgard worked overtime hours that went unpaid.

(Def. Br. at 18-24).[6] However, Burgard has put forth evidence from which a jury could reasonably find that Defendant did know she was working overtime for which she was not compensated. Burgard stated at her deposition:

> Q: [W]as there a time that you told [Paunksniene] that you worked and you did not record it?
> A: There are times that I told her I worked and did not report it.
> Q: When did you tell her that?
> A: When she mentioned that the Gold squad would be helping with overtime.
> Q: And what did she say to you in response to that?
> A: That I would no longer have to, and that the Gold squad would be helping out with overtime.
> Q: Did she also tell you, you should be reporting all of your overtime?
> A: I don't recall her saying that.

(Burgard Dep. Tr. at 193:5-23).[7] Burgard further testified that IBM regularly scheduled "education" and staff meetings during lunch breaks, and that managers "joined the education," and were "aware that [they] were working through lunch . . . ." (*Id.* at 271:9-22). Burgard even responded by email to an inquiry from Ms. Paunksniene on June 22, 2022, that she "simply put that she took 30 minutes for lunch instead of the 45 minutes allotted for lunch every day." (Miller Decl., Ex. F at 3). Burgard added that she would have been "very lucky if [she] even took that time . . . while eating at [her] desk," and she "usually d[idn't] adjust her lunch . . . ." (*Id.*). Ms. Paunksniene forwarded this email exchange to Teresa Skoly, IBM's GA North America Leader, who forwarded it to other executives of Defendant. (*See* Miller Decl., Ex. G).

---

[6] Defendant does not challenge the first element of an unpaid overtime claim—that Plaintiff performed work for which she was not properly compensated. Thus, the Court assumes, without deciding, that Plaintiff has met this element for her first and second claims for relief.

[7] The "Gold Squad" refers to a team of executive assistants who were assigned to assist senior vice presidents. (*See* Yost Decl., Ex. P, "DeChristopher Dep. Tr." at 26:14-27:12).

This evidence proffered by Burgard is sufficient to create an issue of fact regarding Defendant's knowledge of her unpaid overtime work. *See Kuebel*, 643 F.3d at 363 (finding "a genuine issue of material fact as to whether [the defendant] knew [the plaintiff] was working off the clock" where the plaintiff "testified that on several occasions, he specifically complained to his supervisor . . . that he was working more than forty hours per week but recording only forty."); *Murray v. City of New York*, No. 16-CV-08072, 2020 WL 615053, at *8 (S.D.N.Y. Feb. 10, 2020) ("Whether an employer has actual or constructive knowledge that a plaintiff worked overtime is an issue of fact."); *Worley v. City of New York*, No. 17-CV-04337, 2020 WL 730326, at *5 (S.D.N.Y. Feb. 12, 2020) ("Courts often rely on deposition testimony from employees themselves about what their supervisors knew regarding uncompensated overtime.").

Accordingly, Defendant's motion for summary judgment is denied as to Burgard's first and second claims for relief for unpaid overtime.

III. <u>Third Claim for Relief – Failure to Pay All Wages Owed</u>

Burgard's third claim for relief is for failure to pay all wages owed under NYLL § 191. (Am. Compl. ¶¶ 142-50). Defendant argues that this claim fails because Burgard "was paid semi-monthly." (Def. Br. at 24). Burgard responds that she "did not always receive her 'wages earned' in accordance with these payment schedules." (Pl. Br. at 27).

Burgard pled in her Amended Complaint that Defendant "engaged in a common policy and practice of failing to pay Plaintiff and the Class at their established regular rates of pay for all hours worked," including by "requir[ing] Plaintiff and the Class to work beyond their scheduled shift times and through their lunch breaks without proper compensation." (Am. Compl. ¶¶ 146-47). Burgard alleged that "Defendant's failure to compensate Plaintiff and the Class at their established regular rates of pay . . . violated the NYLL . . . including, *inter alia*, NYLL § 191." (*Id.* ¶ 148).

NYLL § 191 provides that "[c]lerical and other worker[s] shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." "NYLL § 191 outlines the frequency with which an employer shall pay an employee 'wages.'" *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 516 (2d Cir. 2022). It is, thus, not "the appropriate vehicle to seek the overtime pay to which plaintiffs claim to be entitled." *Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010). And to the extent Burgard argues that she in fact did not receive her pay stubs on time, she failed to plead such allegations in her Amended Complaint (*see* Am. Compl.) and, thus, is foreclosed from arguing she did not timely receive payment. *See Vitti v. Macy's Inc.*, 758 F. App'x 153, 158 (2d Cir. 2018) ("A plaintiff may not assert a claim for the first time in opposition to a motion for summary judgment.").

Accordingly, Defendant's motion for summary judgment is granted as to Burgard's third claim for relief for failure to pay all wages owed.

IV. Fourth Claim for Relief – Deductions from Wages

Burgard's fourth claim for relief is for unlawful deduction of wages pursuant to NYLL § 193. Defendant argues that this claim is duplicative of Burgard's overtime claims. (Def. Br. at 25; Def. Reply at 16). Burgard responds that this claim is "not identical to her claims for unpaid overtime because they are premised on different statutes and not subject to the administrative exemption defense." (Pl. Br. at 28). Burgard argues that this claim should proceed so that she can recover "under whatever statute would maximize recovery." (*Id.*). The Court agrees with Defendant.

Burgard alleges in the Amended Complaint that "defendant engaged in a policy and practice of automatically deducting a 45-minute lunch break from the daily hours worked by

Plaintiff and the Class despite that Plaintiff and the Class routinely worked through their lunch breaks." (Am. Compl. ¶ 156). This unpaid time, to the extent it caused Burgard to work more than forty hours in a given week, would constitute unpaid overtime. *See Doherty v. Ramapo Manor Nursing Cntr., Inc.*, No. 25-CV-05483, 2026 WL 2517614, at *3 (S.D.N.Y. Aug. 26, 2026) ("Lunch breaks count towards the forty-hour total unless employees enjoy a daily bona fide meal period during which they are completely relieved from duty, and an employee is not relieved if she is required to perform any duties, whether active or inactive, while eating." (citation modified) (quoting *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 116 (2d Cir. 2023)).

Plaintiff's unpaid overtime for working during her meal breaks is properly included in her unpaid overtime claims and, thus, her section 193 claim is dismissed as duplicative of those claims.[8]

V. Fifth Claim for Relief – Inaccurate Wage Statements

Burgard's fifth claim for relief is for inaccurate wage statements pursuant to NYLL § 195. (Am. Compl. ¶¶ 160-72). Defendant argues that Burgard lacks standing to bring this claim. (Def. Br. at 26-27). The Court agrees.

NYLL § 195(3) requires employers "to furnish each employee with a statement with every payment of wages . . . ." This statement must include "the calculation of regular and overtime pay for that pay period, along with information on deductions and minimum wage allowances." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024) (citing NYLL § 195(3)).

In order to bring a claim for violation of NYLL § 195, a plaintiff must establish that they have standing. *Id.* at 306. "[A] plaintiff has standing to bring a claim for monetary damages

---

[8] Regardless, the Court notes that Burgard's unpaid time for working during her meal breaks would not count as a "deduction" under section 193 as it "is simply an allegation that the Defendant[] failed to pay [her] for hours worked." *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 472 (E.D.N.Y. 2011).

following a statutory violation only when he can show a current or past harm *beyond the statutory violation itself*." *Id.* (quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022)). Consequently, "allegations amounting only to a technical violation of § 195 of the New York Labor Law—without a resulting concrete injury—fail to establish Article III standing to pursue a claim for damages based on the violation." *Id.* Moreover, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm" in order to establish standing. *Id.* at 308.

Burgard, in the Amended Complaint, states that Defendant's failure to furnish her with accurate wage statements, reflecting her "proper wages and overtime compensation," prevented her from "(i) realizing [her] true hours worked; (ii) realizing that [she] was underpaid and by how much; and (iii) taking appropriate action to obtain the payments due to them." (Am. Compl. ¶¶ 166-69). Burgard, in opposition to Defendant's motion, argues that she has standing to bring this claim because "she alleges she was not completely and timely paid for all wages due . . . ." (Pl. Br. at 28). However, the Court finds that Burgard does not adequately connect "the lack of accurate notices" to her "downstream harm" sufficient to establish Article III standing for her NYLL § 195 claim.

Burgard has proffered evidence that she was uncompensated for certain overtime work, but she has not provided any evidence connecting Defendant's failure to provide accurate wage statements to her resultant injury. Notably, Burgard *knew* that her wage statements were inaccurate. (*See, e.g.*, Burgard Dep. Tr. at 167:23-24 ("I was aware that I was not recording all of my overtime.")). Courts in this circuit routinely find that such knowledge negates any allegations of harm from the technical inaccuracy of wage statements. *See, e.g.*, *Kasseris v. ZA & D Serv. Station, Inc.*, No. 23-CV-06281, 2026 WL 84037, at *17 (E.D.N.Y. Jan. 12, 2026) ("[P]laintiff fails to cite

any record evidence demonstrating that he 'would have undertaken advocacy and avoided some actual harm or obtained some actual benefit if accurate notices had been provided.'" (quoting *Giancotti v. Pizzarotti*, No. 23-CV-03457, 2025 WL 2607606, at *18 (S.D.N.Y. Sept. 9, 2025)); *Giancotti*, 2025 WL 2607606, at *18 ("Without more, [Plaintiff] merely relies on speculation and conjecture and fails to show that he would have undertaken advocacy and avoided some actual harm or obtained some actual benefit if accurate notices had been provided."); *Rosario v. Prasad Cosmetic Surgery*, No. 21-CV-02944, 2025 WL 486636, at *3 (E.D.N.Y. Feb. 13, 2025) ("[F]inding no evidence of a concrete injury" where the "plaintiff ha[d] failed to demonstrate that defendants' failure to provide wage statements or notice caused her to be unaware of whether she was working over 40 hours a week without overtime compensation."); *Lock v. Costco Wholesale Corp.*, No. 23-CV-07904, 2024 WL 4728594, at *5 (E.D.N.Y. Nov. 8, 2024) (finding that the plaintiffs lacked standing to bring a § 195(3) claim where the plaintiffs "knew their weekly hours exceeded forty hours per week."). Here, Burgard has failed to connect Defendant's lack of accurate wage statements to her downstream harm—not receiving all the overtime payments for which she was due.

Accordingly, Defendant's motion for summary judgment is granted as to Burgard's inaccurate wage statements claim.

VI. Opt-In Plaintiffs

Defendant argues that, if the Court dismisses Burgard's claims, then it should also dismiss the claims of the opt-in plaintiffs, albeit without prejudice. (Def. Br. at 9). To the extent the Court has dismissed Burgard's claims, those claims as pressed by the opt-in plaintiffs are likewise dismissed, without prejudice, for the same reasons the claims of Burgard, the named Plaintiff, fail. *See, e.g.*, *Charlot v. Ecolab, Inc.*, No. 12-CV-04543, 2017 WL 11526717, at *15 (E.D.N.Y. Mar.

29, 2017) ("[B]ecause named plaintiffs' FLSA claims fail, the court dismisses the opt-in plaintiffs without prejudice."). Accordingly, the third, fourth, and fifth claims for relief asserted by the opt-in plaintiffs are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED. Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Defendant's second affirmative defense is dismissed and Defendant is precluded from asserting any such argument at trial. Plaintiff's third, fourth, and fifth claims for relief are dismissed with prejudice, and the third, fourth, and fifth claims for relief, as asserted by the opt-in plaintiffs, are dismissed without prejudice.

The Court has scheduled a status conference for October 22, 2026 at 2:30 p.m. to be held in Courtroom 520 of the White Plains courthouse.

The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 106, 109, and 111.

**SO ORDERED.**

Dated: White Plains, New York
September 17, 2026

PHILIP M. HALPERN
United States District Judge